UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**Steven Roth**,

    *Plaintiff,*

    v.

**National Credit Adjusters, LLC,
Lee Tyler Rempel, and
Elevate Credit, Inc.,**

    *Defendants.*

Case No:   8:21-cv-1787

Ad Damnum:   **$5,400 +
Punitive Damages +
Atty Fees & Costs**

**JURY TRIAL DEMANDED**

## COMPLAINT AND DEMAND FOR JURY TRIAL

**COMES NOW** the Plaintiff, **Steven Roth** ("**Mr. Roth**"), by and through his attorneys, Seraph Legal, P.A., and complains of the Defendants, **National Credit Adjusters, LLC ("NCA"), Lee Tyler Rempel** ("**Rempel**"), and **Elevate Credit, Inc.** doing business as **Rise Credit** ("**Rise**") (jointly "**Defendants**"), stating as follows:

## PRELIMINARY STATEMENT

1.    This is an action brought by Mr. Roth against the Defendants for violations of the Florida *Civil Remedies for Criminal Practices Act*, Florida Statute § 772.101, *et. seq.* ("**CRCPA**"), the *Florida Consumer Collection Practices Act*, Florida Statute § 559.55, *et. seq.* ("**FCCPA**") and against NCA and Rempell for violation of the *Fair Debt Collection Practices Act*, 15 U.S.C. § 1692, *et. seq.*

("**FDCPA**") and against NCA and Rise for violation of the *Fair Credit Reporting Act*, 15 U.S.C. §1681, *et seq.* ("**FCRA**").

## JURISDICTION AND VENUE

2.      Subject matter jurisdiction for Plaintiff's FDCPA claims arises under the FDCPA, 15 U.S.C. § 1692k(d), the FCRA, 15 U.S.C. § 1681p and 28 U.S.C. §1331, as the FDCPA is a federal statute.

3.      This Court has supplemental jurisdiction for Plaintiff's CRCPA and FCCPA claims under 28 U.S.C. § 1367.

4.      The Defendants are subject to the jurisdiction of this Court pursuant to Section 48.193, Florida Statutes and Fed. R. Civ. P. 4(k).

5.      Venue is proper in the Middle District of Florida pursuant to 28 U.S.C. §1391(b)(2), because the acts complained of were committed and / or caused by the Defendants within the Middle District of Florida

## PARTIES – Mr. Roth

6.      **Mr. Roth** is a natural person who at all times relevant has resided in Tampa, Florida.

7.      Mr. Roth is a *Consumer* as defined by 15 U.S.C. § 1692a(3) and Florida Statute § 559.55(8).

## PARTIES – NCA

8.      NCA is a Kansas limited liability company with a principal business address of **327 W 4th Street, Hutchinson, KS 67501.**

9.      NCA is registered to conduct business in the State of Florida, where its registered agent is **Corporation Service Company, 1201 Hays St., Tallahassee, FL 32301.**

## Parties – Rempel

10.     Rempel is the CEO and manager of NCA.

11.     In his capacity as manager, Rempel is the individual responsible for the determination of, and implementation of, NCA's policies and procedures.

12.     Rempel also participates directly in the day-to-day operations of NCA, including the collection of consumer debts and the purchase of consumer debts.

13.     Upon information and belief, Rempel resides at **23 Prairie Dunes Dr., Hutchinson, KS 67502.**

## Parties-- Elevate

14.     Elevate is a Delaware corporation with a principal business address of **4150 International Plaza, Suite 300, Fort Worth, TX 76109.**

15.     Elevate's registered agent is **Corporation Service Company, 251 Little Falls Dr., Wilmington, DE 19808.**

16.     Rempel and NCA are *debt collectors* within the meaning of the FDCPA, 15 U.S.C. § 1692a(6), and the FCCPA, Fla. Stat. § 559.55(7), in that the Defendants use an instrumentality of commerce, including the U.S. mail and / or telephone, interstate and within the state of Florida, for their business, the principal purpose of which is the collection of debts, and / or they regularly collect or attempt to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.

17.     NCA is licensed to collect consumer debts in the State of Florida, holding *Consumer Collection Agency* ("**CCA**") license number CCA0090486.

## FACTUAL ALLEGATIONS

### Rise Makes Illegal Loan to Mr. Roth

18.     On or about October 30, 2019, an unknown individual/individuals obtained an installment loan (the "**Rise Loan**" or "**Loan**") from the online lender Elevate Credit, Inc., doing business as Rise Credit ("**Rise**") in Mr. Roth's name, without his knowledge or consent.

19.     The Rise Loan had a stated principal amount of $4,000.

20.     The Rise Loan was, purportedly, funded through **FinWise,** a small, single-branch bank in Murray, Utah (the "**Debt**").[1]

---

[1] The bank has a small office in Sandy, UT and Garden City, NY, but has no retail branches at these locations.

21.     The loan was of a personal nature and, on information and belief, the proceeds were used for household or personal expenses.

22.     As the Debt arose from the purchase of goods and services which were primarily for family, personal, or household purposes, specifically charges for consumer goods and services, and therefore meets the definition of *Debt* under the FDCPA, 15 U.S.C. § 1692a(5) and the FCCPA, Florida Statute § 559.55(6).

23.     Florida Statute § 687.071(2) renders loans made with annual interest rates greater than 25% a second-degree misdemeanor.

24.     Florida Statute § 687.071(3) renders loans made with annual interest rates greater than 45% a third-degree felony.

25.     Florida Statute § 687.071(7) renders any loan in violation of Florida Statute § 687.701, and any debt stemming from such extension of credit, void and unenforceable.

26.     The annual interest rate on the Rise Loan exceeded **115% annually**.

27.     The loan made by Rise, ostensibly to Mr. Roth, was thus *void ab initio*. *See Stubblefield v. Dunlap*, 148 Fla. 401, 4 So.2d 519 (1941); *Pushee v. Johnson*, 123 Fla. 305, 166 So. 847 (1936); *River Hills, Inc. v. Edwards*, 190 So.2d 415 (Fla. 2d DCA 1966). *Richter Jewelry Co. v. Schweinert*, 169 So. 750, 758-59 (Fla. 1935) (criminally usurious loans are "void as against the public policy of the state as established by its Legislature.")

28.    The Rise loan is therefore an "unlawful debt" per §772.102(2) Florida Statutes.

29.    Florida law prohibits any recovery of the principal on such loans. *Rollins v. Odom*, 519 So. 2d 652, 656 (Fla. Dist. Ct. App. 1988).

### Rise Engages in Rent-a-Bank Scheme with FinWise

30.    Rise is a Fort Worth, Texas-based "FinTech" business which makes loans to consumers at interest rates illegal in the vast majority of states, including Florida.

31.    One of the founders of Rise was Ken Rees ("**Rees**") who was, until his resignation in July 2019, also its CEO.

32.    Rees was previously the CEO of Think Finance, LLC ("**Think Finance**"), which made consumer loans at triple-digit interest rates.

33.    Initially, Think Finance "partnered" with the First Bank of Delaware to launder its loans to create the appearance that they were issued by a state-chartered bank, to avoid state usury laws.

34.    In 2012, the First Bank of Delaware was stripped of its bank charter and fined $15 million.

35.    Rees thereafter partnered with the Chippewa Cree Tribe of the Rocky Boy's Indian Reservation in Box Elder, Montana and began laundering its loans – now re-branded "Plain Green Loans" – through the Tribe, claiming the Tribe's

sovereign immunity prevented civil and criminal action from being taken against it.  Such agreements are often referred to as "rent-a-tribe" schemes.

36.    Plain Green's loans charged interest rates of up to 400% annually.

37.    After lawsuits filed against Think Finance by the Consumer Financial Protection Bureau, the Pennsylvania Attorney General, and others, relating to the wildly-usurious interest rates being charged by Plain Green, Rees formed Elevate Credit, Inc.

## Rise's Business Model

38.    In an effort to avoid state usury laws, such as Florida's, Rise has "partnered" with FinWise, a single-branch bank chartered in Utah.

39.    FinWise, as a bank, is not subject to foreign state interest rate limits pursuant to 12 U.S.C. §85, as Utah has no maximum legal interest rate in its state law.

40.    Rise "launders" its loans through FinWise, claiming that FinWise is the true lending entity.

41.    However, FinWise was not the true lender of Mr. Roth's purported loan.

42.    Indeed, FinWise had virtually nothing to do with the marketing, underwriting, servicing, collection, and post-charge-off sale to defendant NCA.

43.     Moreover, at no point was any of FinWise's own capital actually at risk.

44.     FinWise is only paid a small portion for its role in Rise's lending.

45.     At all times relevant, Elevate EF SPV ("**EF SPV**"), a Cayman Islands special purpose vehicle which operates for the financial benefit of Elevate Credit, had purchased a 96% interest in the receivables for the loans, including principal and interest due.

46.     This 96% interest makes EF SPV the legal and equitable owner of the receivables for the loans.

47.     Elevate Credit is the primary beneficiary of EF SPV, and receives the income generated from this 96% ownership interest.

48.     Elevate Credit substantially controls and manages EF SPV and absorb its losses, if any.

49.     Elevate Credit is the entity whose capital is at risk if a particular consumer loan goes bad.

50.     FinWise contributes, at most, 4% of the capital of any consumer loan.

51.     Thus, FinWise contributed $160 or less to fund Mr. Roth's loan, while Elevate Credit contributed $3,840 or more.

52.     Elevate Credit protects EF SPV from Rise loan losses, placing the risk of loss on Elevate Credit.

53.     Similarly, FinWise's economic interests are protected due to its agreement with Elevate Credit, which includes a stipulation that EF SPV maintain cash collateral in a FinWise account to secure its obligations to purchase the Rise loans allegedly made "by" FinWise.

54.     Elevate Credit, through ones of its subsidiaries, also acts as the servicer for the Rise loans. Elevate Credit reconciles the accounts, posts payments and other credits to the accounts, and provides periodic billing statements to consumers.

55.     Elevate Credit, not FinWise, is the true lender of the Loan, because it has the predominant economic interest in loans made to consumers like Mr. Roth. *See Fulford v. Marlette Funding, LLC,* No. 17CV30376 and *Fulford v. Avant of Colorado, LLC,* No. 17CV30377 (Colo. Dist. Ct. Denver County Aug. 13, 2018); *see also, e.g., State Bank v. Strong,* 651 F.3d 1241 (11th Cir. 2011); Easter v. Am. W. Fin., 381 F.3d 948, 957 (9th Cir. 2004); *CFPB v. CashCall, Inc.,* No. CV 15-7522-JFW (RAOx), 2016 WL 4820635 (C.D. Cal. Aug. 31, 2016); *Penn v. Think Fin., Inc.,* No. 14-cv-7139, 2016 WL 183289 (E.D. Pa. Jan. 14, 2016); *Goleta Nat'l Bank v. Lingerfelt,* 211 F. Supp. 2d 711 (E.D. N.C. 2002); *CashCall, Inc. v. Morrisey,* No. 12-1274, 2014 WL 2404300 (W. Va. May 30, 2014) (memorandum decision); *Ubaldi v. SLM Corp.,* 852 F. Supp. 2d 1190 (N.D. Cal. 2012); and *Eul v. Transworld Sys.,* No. 15 C 7755, 2017 WL 1178537 (N.D. Ill. Mar. 30, 2017).

56.     As per Rise's business model, once FinWise "made" the Loan to Mr. Roth, it was immediately assigned to Rise.

57.     Rise then proceeded to attempt to collect the loan – including the usurious interest – from Mr. Roth.

58.      However, Rise, a non-bank assignee of the Rise Loan, had no legal ability to collect the assessed interest. *See*. *Madden v. Midland Funding, LLC*, 786 F.3d 246 (2d Cir. 2015).

59.     Rise has been sued in the past for collection of unlawful debt and its use of FinWise in its "rent-a-bank" schemes. *See District of Columbia vs. Elevate Credit, Inc.*, case 1:2020cv01909, U.S.D.C., District of Columbia, July 2, 2020.

## **Rise Reports Debt to CRAs**

60.     Rise also reported the purported Debt to the major consumer credit reporting agencies ("**CRAs**"), including Experian, monthly, beginning November 2019. **SEE PLAINTIFF'S EXHIBIT A.**

61.     By August 2020, Rise had reported the account as an account charged to profit and loss, a highly negative designation which has a severe impact on a consumer's credit score.

62.     Upon information and belief, Rise made multiple attempts to collect the Debt from Mr. Roth in the last 24 months, including e-mail and postal correspondence.

63.    Each one of these attempts sought to collect an unlawful Debt from Mr. Roth, *i.e.*, the balance of a loan made at over 100% annual interest, and accrued interest and fees on the loan.

64.    In April 2021, Mr. Roth disputed the Rise tradeline to Experian, stating the account was the result of identity theft, that the Debt was not owed by him and should be deleted from his credit report.

65.    Mr. Roth included a signed affidavit provided by the Federal Trade Commission ("**FTC**") and other documentation as part of his dispute.

66.    Experian's automated systems initiated an *Automated Consumer Dispute Verification* Request ("**ACDV**") which was delivered to Rise through a system known as e-OSCAR.

67.    Experian required Rise to make a reasonable investigation pursuant to the FCRA.

68.    Rise responded to the ACDV, certifying to Experian that its information was accurate and required no update, change, or modification. *Id.*

69.    Rise also failed update its reporting to indicate the account data was "disputed by consumer." ***Id.***

70.    The failure to update a report to indicate that a debt is disputed can, in and of itself, violate the FCRA. *See Saunders v. Branch Banking and Trust Co. of VA*, 526 F.3d 142 (4th Cir. 2008).

71.     Rise failed to make a reasonable investigation into Mr. Roth's dispute. No reasonable investigation could have determined that Rise's reporting concerning the Debt – at best, highly questionable to begin with – was *not* disputed by Mr. Roth.

72.     If a data furnisher like Rise decides to report disputed information as verified, "the question of whether the furnisher behaved reasonably will turn on whether the furnisher acquired sufficient evidence to support the conclusion that the information was true." *Hinkle v. Midland Credit Mgmt., Inc.*, 827 F.3d 1295 (11th Cir. 2016).

73.     Mr. Roth supplied documentation – the FTC affidavit – swearing that the Debt was the result of identity theft and not the result of any action undertaken by him, and that he received no benefit or payment from Rise. Nonetheless, Rise still concluded – somehow – that Mr. Roth did not dispute Rise's report concerning the debt.

74.     Further, Rise knew, or should have known, the report concerned an unlawful debt made at an interest rate of over 100% -- and for that reason alone, it should have determined its report could not be verified as "accurate."

75.     A similar dispute to Equifax, another nationwide CRA, resulted in Rise verifying its data as accurate in April 2021, despite Mr. Roth including the same FTC affidavit and additional information.

## NCA Attempts to Collect Usurious Rise Loan from Mr. Roth

76.     Around December 2020, Rise sold the Rise Loan to NCA.

77.     NCA, in compliance with 15 U.S.C. § 1692g, mailed Mr. Roth a collection letter, seeking to collect the Rise Loan.

78.     NCA also reported the purported debt to the major consumer credit reporting agencies ("**CRAs**"), including Experian, monthly, beginning February 2021. *Id.*

79.     Reporting a debt to a CRA is an attempt to collect the debt alleged therein. *See, e.g., Edeh v. Midland Credit Management, Inc.,* 748 F. Supp. 2d 1030 (D. Minn. 2010) ("The Court has learned, through its work on countless FDCPA cases, that threatening to report and reporting debts to CRAs is one of the most commonly-used arrows in the debt collector's quiver.")

80.     NCA certified to the CRAs that the debt was "in collection," with $3,717 past due, thereby indicating that the Rise Loan was legitimate and lawful.

81.     NCA knew, or should have known, that it was collecting illegal debt from Mr. Roth.

82.     On information and belief, NCA is a large debt buyer with a number of experienced lawyers advising it on consumer protection statutes.

83.     Further, NCA has been subject to multiple actions by state regulatory authorities over its attempts to collect illegally-issued consumer loans.

84.     For example, NCA was sued in July 2012 by the Arkansas State Attorney General for collecting on payday loans issued to Arkansas consumers in violation of Arkansas law. As part of its settlement with the Attorney General, NCA cancelled collection on $2.7 million in loans, and paid $200,000 to the State.

85.     In November 2014, NCA was named as a co-defendant in a lawsuit by the Pennsylvania Attorney General filed against several internet-based payday loan lenders claiming affiliation with Native American tribes. The suit claimed the loans are illegal under Pennsylvania law and alleged that NCA attempted to collect many of these payday loans, despite knowledge that such loans were illegal under state law.

86.     In January 2015, NCA settled with the New York City Department of Consumer Affairs, in which it agreed to pay $962,800 in consumer restitution to over 4,000 residents of New York City that it had collected payment from loans it purchased from unauthorized payday loan lenders. It also paid a $350,000 fine and was banned from collecting debt in New York City for six years.

87.     Close to 100 other lawsuits have been filed against NCA for its collection of consumer loans made under illegal terms.

88.     NCA purchases a large volume of unlawful debt from lenders including Rise, at a tiny fraction of face value, and then attempts to collect the full-face value those debts from consumers like Mr. Roth.

89.     On information and belief, NCA was in possession of the original loan agreement documents creating the Debt at the time it attempted to collect the Debt from Mr. Roth.

90.     On information and belief, the usurious interest rate was printed in large, bold type on the Truth in Lending Act ("**TILA**") disclosure.

91.     Mr. Roth suffered severe emotional distress as a result of being subjected to illegal collection actions by NCA concerning a loan which he neither received nor owes.

92.     Mr. Roth's credit reports and scores have been severely and adversely negatively impacted from NCA's false reporting that he owes a debt in excess of $3,500 to NCA.

93.     At all times relevant, Rempel, as CEO of NCA, instructed his agents and employees to attempt to collect the Rise Loan from Mr. Roth.

94.     At all times relevant, Rempel, as CEO of NCA, authorized the purchase of bulk portfolios of debt from lenders including Rise, despite knowing the loans had been made at triple-digit interest rates through dubious "rent-a-bank" schemes.

## Disputes to the CRAs Concerning NCA

95.     On or about April 7, 2021, Mr. Roth disputed both NCA's tradeline which referenced the Rise loan appearing on his report, stating that the Rise account was not his, and had been opened fraudulently. Mr. Roth included a copy of an Identity Theft Affidavit, stating the Rise loan was the result of identity theft.

96.     Experian sent NCA an ACDV.

97.     NCA responded to the Experian's ACDV, certifying that its report was accurate. *Id.*

98.     NCA failed to make a reasonable investigation into the matter since any reasonable investigation would have: (1) determined the Debt itself was not enforceable against Mr. Roth – even assuming, *arguendo*, Mr. Roth had taken the loan out himself – since the interest rate on the Debt exceeded 100% annually; and, (2) determined that it could not verify that the Debt belonged to Mr. Roth, particularly in light of the fact that Mr. Roth included the FTC affidavit stating that it was not his account.

99.     Similar disputes to Equifax in April 2021 and July 2021 resulted in NCA continuing to verify its reported information as "accurate."

100.    Mr. Roth has hired the aforementioned law firm to represent him in this matter and has assigned his right to fees and costs to such firm.

## COUNT I
## VIOLATIONS OF THE FDCPA—NCA and Rempel

101.   Mr. Roth hereby incorporates paragraphs 1 – 100 as if fully stated herein.

102.   NCA and Rempel violated **15 U.S.C. § 1692e and 1692e(10)** when NCA used misleading and deceptive means to attempt to collect a debt by attempting to collect the Debt from Mr. Roth, a Florida resident, both in writing and via credit reporting, claiming a Debt from an unlicensed, non-bank entity, Rise, bearing annual interest exceeding 100%, was a legal, valid, and enforceable debt, when the Rise Loan was null, void, and unenforceable under Florida law, and that Mr. Roth owed the Debt, when it was the result of identity theft, and NCA verified its information as accurate multiple times upon dispute.

103.  NCA and Rempel violated **15 U.S.C. § 1692e(2)(a)** when NCA made a false representation about the character, amount and/or legal status of a debt by attempting to collect from Mr. Roth, a Florida resident, both in writing and via credit reporting, a Debt from an unlicensed, non-bank entity, Rise, bearing annual interest exceeding 115%, was a legal, valid, and enforceable debt, when the Rise Loan was null, void, and unenforceable under Florida law, and that Mr. Roth owed the Debt, when it was the result of identity theft, and NCA verified its information as accurate multiple times upon dispute.

104. NCA and Rempel violated **15 U.S.C. § 1692e(8)** when NCA communicated credit information which was false, and which NCA knew, or should have known was false, to wit, that a Debt from an unlicensed, non-bank entity, Rise, bearing annual interest exceeding 100%, was a legal, valid, and enforceable debt, and that Mr. Roth actually owed the $3,700-plus balance, when he did not owe it as it was null, void and unenforceable against him pursuant to Florida law.

105. NCA and Rempel violated **15 U.S.C. § 1692f(1)** when NCA attempted to collect an amount not authorized by contract or law – the Rise Loan - from Mr. Roth through written demands and credit reporting, when the Rise Loan was null, void, and unenforceable under Florida law.

106. The above stated violations were committed pursuant to policies put in place by Rempel and subject to his day-to-day oversight.

107. Rempel is therefore jointly and severally liable with NCA. *See Fed. Trade Comm'n v. Moses*, 913 F.3d 297 (2d Cir. 2019).

108. NCA and Rempel's conduct renders them liable for the above-stated violations of the FDCPA.

**WHEREFORE,** Mr. Roth respectfully requests that this Honorable Court enter judgment against NCA and Rempel, jointly and severally, for:

a.    Statutory damages of **$1,000.00**, pursuant to 15 U.S.C. § 1692k(a)(2)(A);

b.    Unspecified actual damages, pursuant to 15 U.S.C. § 1692k(a)(2)(A);

c.    Reasonable costs and attorneys' fees pursuant to 15 U.S.C. § 1692k(a)(3); and,

d.    Such other relief that this Court deems just and proper.

<u>**COUNT II**</u>
<u>**VIOLATIONS OF THE CRCPA—NCA and Rempel**</u>

109.    Mr. Roth hereby incorporates paragraphs 1 – 100 as if fully stated herein.

110.    NCA and Rempel violated **Florida Statute § 772.103(3),** when they associated with the enterprise, Elevate Credit, through the collection of an unlawful debt – the Rise Loan.

111.    NCA and Rempel violated **Florida Statute § 772.103(4)** when, aware that the Loan at issue was illegal, they knowingly conspired, with Rise and FinWise, to collect an unlawful debt – the Rise Loan – and used funds collected in furtherance of NCA's ongoing enterprise.

112.    NCA and Rempel took action in furtherance of this conspiracy, including mailing a collection letter and reporting the Loan to the nationwide CRAs as a purported unpaid debt, damaging Mr. Roth's credit and, in effect,

holding his credit report hostage until he paid the unlawful debt, even when presented with evidence the unlawful debt itself was the result of identity theft.

113.   NCA and Rempel have attempted to collect virtually-identical debts through credit reporting, phone calls, demand letters, and threats of litigation from hundreds, if not thousands, of other Florida residents.

**WHEREFORE,** Mr. Roth respectfully requests this Honorable Court enter judgment against NCA and Rempel, jointly and severally, ordering:

a.   Threefold the amount of actual damages, or, in the alternate, the statutory minimum of $200, whichever is greater, pursuant to Florida Statute 772.104(1);

b.   Reasonable costs and attorneys' fees pursuant to pursuant to Florida Statute 772.104(1);

c.   An injunction of Estoppel against NCA from engaging in any further action in violation of Florida law, pursuant to Florida Statute 772.14; and,

d.   Any other relief this Court deems equitable and proper under the circumstances.

## COUNT III
## <u>VIOLATIONS OF THE FCCPA – NCA and Rempel</u>

114.   Mr. Roth hereby incorporates paragraphs 1 – 100 as if fully stated herein.

115.   NCA and Rempel violated Section **559.72(9)**, Florida Statutes, when NCA attempted to collect the Rise Loan from Mr. Roth via collection letters, when the Rise Loan was illegitimate and unenforceable due to the application of interest rates in excess of 100% percent annually on the principal amount of the loan, in violation of Section 687.071, Florida Statutes, and NCA knew, or should have known, that the Rise Loan was unenforceable in Florida.  Further, the Defendants had reason to know the unlawful debt itself was the result of identity theft.

116.   NCA and Rempel violated Section **559.72(9)**, Florida Statutes, when NCA asserted rights which do not exist, specifically, the right to collect the Rise Loan from Mr. Roth, when the loan was not legally owed pursuant to Florida law.

117.   NCA was in possession of the original loan documents and thus knew, or should have known, that the loan contained an illegal interest rate in Florida.

118.   The above-stated violations were committed pursuant to policies put in place by Rempel and subject to his day-to-day oversight.

119.   Rempel is therefore jointly and severally liable with NCA. *See Fed. Trade Comm'n v. Moses*, 913 F.3d 297 (2d Cir. 2019).

**WHEREFORE,** Mr. Roth respectfully requests this Honorable Court enter judgment against NCA and Rempel for:

a.    Statutory damages of **$1,000.00** pursuant to Section 559.77(2), Florida Statutes;

b.    Actual damages pursuant to Section 559.77(2), Florida Statutes;

c.    Injunctive relief preventing NCA from attempting to collect the alleged loan from Mr. Roth pursuant to Section 559.77(2), Florida Statutes;

d.    Reasonable costs and attorney's fees pursuant to pursuant to Section 559.77(2), Florida Statutes; and,

e.    Such other relief that this Court deems just and proper.

### COUNT IV
### VIOLATIONS OF THE FCRA – NCA and Rempel

120.   Mr. Roth hereby incorporates paragraphs 1 – 100 as if fully stated herein.

121.   NCA violated **15 U.S.C. § 1681s-2(b)** when it failed to update, modify, or correct its reports after receiving Mr. Roth's dispute from Experian.  Any reasonable investigation would have concluded that the purported Rise debt could not be verified as accurate as it constituted an unlawful debt under Florida statutes and the loan was *void ab initio*. Further, Mr. Roth provided documents showing the loan was the result of identity theft; NCA verified its information as "accurate" nonetheless without

actually investigating Mr. Roth's claims.

122.   NCA's conduct was willful and intentional, or, alternately, was done with a reckless disregard for its duties under the FCRA to make reasonable investigations, and its policies could reasonably be foreseen to cause harm to Mr. Roth. Indeed, NCA was intentionally and actively trying to harm Mr. Roth, by holding his credit report hostage to get him to pay a disputed debt he did not owe.

123.   As a result of its conduct, NCA is liable to Mr. Roth pursuant to the FCRA for statutory damages of up to $1,000 for *each occurrence*, and other relief.

**WHEREFORE,** Mr. Roth respectfully requests that this Honorable Court enter judgment against NCA for:

a.   The greater of statutory damages of **$1,000** per incident or Mr. Roth's actual damages, pursuant to 15 U.S.C. § 1681n(a)(1)(A);

b.   Reasonable costs and attorneys' fees pursuant to 15 U.S.C. §1681n(a)(3); and,

c.   Such other relief that the Court deems just and proper

### COUNT V
### VIOLATIONS OF THE CRCPA—Rise

124.   Mr. Roth hereby incorporates paragraphs 1 – 100 as if fully stated herein.

125.   Rise violated **Florida Statute § 772.103(2),** when it engaged in a pattern of criminal activity and collection of unlawful debt, by making loans at

interest rates well over rates deemed criminally usurious by Florida (as well as in many other states which prohibit usury), and attempted to collect such loans, for the purpose of maintaining control of an enterprise which consisted of Rise and other companies though which it funneled and laundered money.

126.    Rise violated **Florida Statute § 772.103(3),** when it associated with FinWise, NCA, and others, to facilitate the collection of unlawful debt.

127.    Rise violated **Florida Statute § 772.103(4)** when they conspired and endeavored, with NCA and FinWise, to collect an unlawful debt – the Rise Loan – and to use funds collected in furtherance of NCA's ongoing enterprise.

128.    Rise took action in furtherance of this conspiracy, including collection correspondence and reporting the unlawful debt to the nationwide CRAs as a purported "unpaid debt," damaging Mr. Roth's credit and, in effect, holding his credit report hostage until he paid the unlawful debt, even when presented with evidence the unlawful debt itself was the result of identity theft.

**WHEREFORE,** Mr. Roth respectfully requests this Honorable Court enter judgment against Rise, ordering:

a.    Threefold actual damages, or, in the alternate, the statutory minimum of $200, whichever is greater, pursuant to Florida Statute 772.104(1);

b.    Reasonable costs and attorneys' fees pursuant to pursuant to Florida Statute 772.104(1);

c.     An injunction of Estoppel against NCA from engaging in any further action in violation of Florida law, pursuant to Florida Statute 772.14; and,

d.     Any other relief this Court deems equitable and proper under the circumstances.

## COUNT VI
## <u>VIOLATIONS OF THE FCCPA – NCA and Rempel</u>

129.   Mr. Roth hereby incorporates paragraphs 1 – 100 as if fully stated herein.

130.   Rise violated Section **559.72(9)**, Florida Statutes, when Rise attempted to collect the Rise Loan from Mr. Roth via a collection letter, when the Rise Loan was illegitimate under Section 687.071, Florida Statutes. Further, the Defendants knew the unlawful debt itself was the result of identity theft.

131.   Rise made its reports to the CRAs with malice[2], in an attempt to intentionally harm Mr. Roth.

---

[2] "Malice can be established by evidence showing the defendant made a false statement 'with knowledge that it was false or with reckless disregard of whether it was false or not.'" *Long v. Pendrick Capital Partners II, LLC*, Case No.: GJH-17-1955 (D. Md. Mar. 18, 2019) (quoting *New York Times v. Sullivan*, 376 U.S. 254, 270-80 (1964) ("A jury could conclude that (Defendant) acted with reckless disregard for the truth when it initially furnished data about the disputed Emcare debt to the CRAs and when it verified the debt more than once. Plaintiff put (Defendant) on notice that she was not responsible for the Emcare debt, yet (Defendant) reported the debt anyway.")

**WHEREFORE,** Mr. Roth respectfully requests this Honorable Court enter judgment against Rise for:

a.      Statutory damages of **$1,000.00** pursuant to Section 559.77(2), Florida Statutes;

b.      Actual damages pursuant to Section 559.77(2), Florida Statutes;

c.      Injunctive relief preventing NCA from attempting to collect the alleged loan from Mr. Roth pursuant to Section 559.77(2), Florida Statutes;

d.      Reasonable costs and attorney's fees pursuant to pursuant to Section 559.77(2), Florida Statutes; and,

e.      Such other relief that this Court deems just and proper.

## COUNT VII
## VIOLATIONS OF THE FCRA – Rise

132.  Mr. Roth hereby incorporates paragraphs 1 – 100 as if fully stated herein.

133.  Rise violated **15 U.S.C. § 1681s-2(b)** when it failed to update, modify, or correct its reports after receiving notices of dispute from Experian and Equifax on at least two separate occasions. Any reasonable investigation would have concluded that the purported Rise debt could not be verified as accurate as it constituted unlawful debt under Florida statutes and the loan was *void ab initio*. Further, Mr. Roth provided

documents showing the loan was the result of identity theft; Rise verified its information as "accurate" nonetheless without actually investigating Mr. Roth's claims. Rise did not so much as update its report to indicate the information was "disputed by consumer," and as such, failed to properly update and modify information upon notice of dispute.

134.   Rise's conduct was willful and intentional, or, alternately, was done with a reckless disregard for its duties under the FCRA to make reasonable investigations, and its policies could reasonably be foreseen to cause harm to Mr. Roth.

135.   As a result of its conduct, Rise is liable to Mr. Roth pursuant to the FCRA for statutory damages of up to $1,000 for *each occurrence*, and other relief.

**WHEREFORE,** Mr. Roth respectfully requests that this Honorable Court enter judgment against Rise for:

a.   The greater of statutory damages of **$1,000** per incident or Mr. Roth's actual damages, pursuant to 15 U.S.C. § 1681n(a)(1)(A);

b.   Reasonable costs and attorneys' fees pursuant to 15 U.S.C. §1681n(a)(3); and,

c.   Such other relief that the Court deems just and proper

## <u>DEMAND FOR JURY TRIAL</u>

Mr. Roth hereby demands a trial by jury on all issues so triable.

Respectfully submitted on July 22, 2021, by:

/s/ *Philip R. Goldberg*
Philip R. Goldberg
Florida Bar # 105940
PGoldberg@SeraphLegal.com

/s/ *Bryan J. Geiger*
Bryan J. Geiger, Esq.
Florida Bar # 119168
BGeiger@seraphlegal.com

**SERAPH LEGAL, P. A.**
1614 N. 19th St.
Tampa, FL 33605

Tel: 813-567-1230
Fax: 855-500-0705
*Attorneys for Plaintiff*

## <u>ATTACHED EXHIBIT LIST</u>

A        Experian Credit Report Dated June 15, 2021, EXCERPT